IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 96-10286

Summary Calendar

---

OLLIE DAILEY

Plaintiff-Appellant,

v.

VOUGHT AIRCRAFT CO.

Defendant-Appellee.

---

Appeal from the United States District Court
For the Northern District of Texas
(3:94-CV-1214-X)

---

October 18, 1996

Before HIGGINBOTHAM, WIENER, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

### Factual Background

Plaintiff Dailey has worked as a class B machinist for the defendant, from time to time, for a number of years. At various times he has been laid off and recalled, depending on defendant's work requirements and order volume. At the time of the district court's decision, he was working as a class B machinist with no working restrictions due to his alleged disability. Plaintiff's job as a machinist requires him to work on large machines and to

---

[*]Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

lift large cutting pieces into place. Some of these machines are equipped with hoists which help to lift the loads into place.

In January, 1990, plaintiff suffered an injury in an on-the-job accident. It is this injury that forms the basis of the plaintiff's current action. Plaintiff claims that his injury resulted in a cognizable disability under the Americans with Disabilities Act (the "ADA"). As a result of this injury, Dailey's doctor signed various letters placing him on various work restrictions concerning the amount of weight he could lift. These restrictions varied frequently, hitting virtually every five-pound increment between five pounds and fifty pounds at some point in time, many of them more than once. On several occasions, Dailey's doctor stated that Dailey was unable to work at all, and at least once stated that Dailey would never be able to return to his job. Defendant was transferred back and forth from different shifts and was eventually laid off. Plaintiff filed suit when he was not returned to work as quickly as he thought he should be, alleging racial discrimination, disability discrimination, and retaliation. The ensuing ligitation has resulted in three cases against Vought and its predecessors for alleged violations of various employment-related statutes over the past several years. The first, *Dailey v. LTV Aerospace & Defense Co.*, Appeal No. 95-10156 ("*Dailey I*"), alleged Vought discriminated against Dailey on account of race and disability and then retaliated against him because he complained,

2

intentionally inflicting emotional distress.  Dailey also sought to recover under the Civil Rights Act of 1991, 42 U.S.C. § 1981a (the "'91 Act").  This court has already affirmed the district court's resolution of *Dailey I*,[1] including:

- dismissal of Dailey's claims arising under the '91 Act because Dailey's factual allegations occurred prior to the Act's passage;
- summary judgment for Vought on Dailey's claim for intentional infliction of emotional distress;
- summary judgment for Vought on his Rehabilitation Act claims;
- dismissal of Dailey's ADA claim in order to allow completion of the administrative process;
- removal of the case from the jury docket; and,
- after a bench trial on the merits, final judgment for Vought.

Dailey's second action ("*Dailey II*"), filed in February of 1994, alleged that his layoff was the result of race discrimination and retaliation in violation of Title VII.  Dailey's third action ("*Dailey III*") asserted that Vought violated the ADA, Title VII, and § 1981 when it failed to return Dailey to work in October of 1992.  *Dailey II* and *III* were consolidated, and the district court ruled on those cases (except for the ADA claim) finding that Dailey presented no more evidence of discrimination in *Dailey II* and *III* than he did in *Dailey I*, dismissing Dailey's Title VII claim challenging his inability to return to work because it had been disposed of in *Dailey I*, and dismissing Dailey's § 1981 claim because it could have been asserted in *Dailey I*.  The district

---

[1] *See Dailey v. International Union*, 82 F.3d 415 (5th Cir. 1996).

3

court also imposed Rule 11 sanctions both for failure to conduct a reasonable inquiry and for asserting frivolous claims. This court affirmed in Appeal No. 95-10437.[2]

On January 6th, 1995, the trial court issued findings of fact and conclusions of law relating to *Dailey I*, *II* and *III* on the issues previously tried at the bench trial. The factual findings included:

- C    Vought honored Dailey's restrictions, as issued by Dailey's doctor, by allowing Dailey to choose which of Vought's machines to use for his work;
- C    the restrictions issued by Dailey's doctor changed often and repeatedly, from 5 to 50 pound lifting restrictions and back (and every increment in between);
- C    at various times, the restrictions issued by Dailey's doctor have stated that he was never going to be capable of working again;
- C    Dailey's doctor was providing recommendations for Dailey on the doctor's letterhead, based on Dailey's subjective input and without medical diagnosis, for the sole purpose of giving the documents to Vought for Dailey's own purposes (they were "a sham," reducing to writing whatever Dailey requested); and,
- C    in September, 1992, Dailey was awarded workers' compensation for his injuries by a jury.

Dailey apparently never appealed these findings of fact or conclusions of law.

While this court was considering Dailey's consolidated *Dailey II* and *Dailey III* appeals, his ADA claim was still before the district court. The district court granted summary judgment to Vought on that claim on March 11, 1996, on the separate grounds

---

[2] This case was consolidated with Appeal No. 95-10156. *See Dailey v. Vought Aircraft*, 82 F.3d 415 (5th Cir. 1996). This court also denied Dailey's request for panel and en banc reconsideration.

4

that Dailey was unable to establish a *prima facie* case of discrimination and that he presented no evidence to overcome Vought's legitimate non-discriminatory reason for the action it took. Undaunted by his previous record of success on his discrimination claims in this Court, Dailey now appeals. We review *de novo.*

## Discussion

The parties clash over whether Dailey is bound by the district court's factual findings in *Dailey I.* We need not decide that issue here. The previous findings aside, we find no error in the grant of summary judgment here.

On this record, Dailey is not an individual with a disability. The ADA defines a disability to be:

(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). Dailey claims to be in the first and third categories, alternatively. The statute itself defines neither "substantially limits" nor "major life activities." But regulations promulgated under the ADA define both. "Major life activities" is defined as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(I). We have previously noted that this list is not exclusive. "Other life

5

activities could include lifting, reaching, sitting, or standing." *Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 726 n.7 (5th Cir. 1995).

For his claim of disability under § 12102(A), Dailey maintains only that he was substantially limited in his ability to perform the major life activities of lifting and working. In the alternative, Dailey claims he was *regarded* as having a disability which substantially limited his major life activity of working. We analyze each of the three contentions in turn.

## A.

Dailey claims that he was substantially limited in the major life activity of lifting. To determine whether a person is substantially limited in a major life activity other than working, we look to whether the person can perform the life activity in the normal activities of daily living. *Ray v. Glidden Co.*, 85 F.3d 227, 229 (5th Cir. 1996); *Dutcher*, 53 F.3d at 726. There is no evidence that Dailey cannot perform his normal daily activities of living. Plaintiff would have us infer a disability from his doctor's lifting restrictions. All the evidence before us at this time suggests, and Dailey now maintains, that he can now lift as long as he avoids loads over 20 pounds. *Dutcher* and *Ray* make clear that the inability to lift discrete loads of heavy weight does not by itself render a person substantially limited in a major life activity. *Ray*, 85 F.3d at 229; *Dutcher*, 53 F.3d at 726.

6

Dailey also claims to be substantially limited in the major life activity of working. For the major life activity of working, the test is whether Dailey is "significantly restricted in [his] ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities." *Dutcher*, 53 F.3d at 726. "The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." *Id.* To meet this test, Dailey speculates that his lifting restrictions will interfere with his ability to perform heavy labor positions and that a reasonable jury could conclude or infer that his disability substantially limits the major life activity of working. Dailey does not explain why his job as machinist ought to be compared to all "heavy labor" jobs, nor why he could not perform machinist jobs working with smaller bits or on smaller pieces. He has presented no evidence whatever of a class of jobs from which he is excluded. He has presented no evidence of any other job from which he actually has been excluded due to this "disability." The party opposing summary judgment must offer evidence, not speculation as to what a jury might or might not infer. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The district court correctly granted summary judgment on this definition of a disability as well.

Finally, Dailey's claim that he is disabled within the meaning of the ADA depends on whether Vought perceived him to have a disability.[3] Vought maintains that, at the time Vought did not return Dailey to work as quickly as he wanted, Vought was experiencing a reduction in the amount of work available to machinists in Dailey's classification and with Dailey's lifting restrictions. It is undisputed that Dailey gave Vought the lifting restrictions, and that they differed among widely varying weights at various times. Dailey has presented no evidence, other than inferences based on his already twice-dismissed racial discrimination and retaliation claims, that Vought did not have a downturn of work. In addition, the evidence before the court strongly suggests that, at several times, Dailey's physician said he was unable to work at all, and if at all with lifting restrictions that applied to his job. Dailey has offered no evidence that Vought wrongly perceived him as having a disability. The district court correctly granted summary judgment on this definition of disability as well.

AFFIRMED.

---

[3] Dailey did not specifically plead that Vought perceived him as having a disability. Generally, he has contended that he had a disability under § 12102(2)(A) rather than that he was perceived as having a disability under (C). The parties clash over whether Dailey's failure to plead this contention specifically precludes the argument now. We do not decide that issue here as, whether or not Dailey's pleadings were proper, he offered insufficient evidence to preclude summary judgment on the issue.